IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KATHLEEN MORROW, ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action B-05-209 |
| | § | |
| WYETH, ET AL. | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

BE IT REMEMBERED that on October 13, 2005, the Court **DENIED** Plaintiffs' Motion to Remand. Dkt. No. 6.

**I. Background**

On May 29, 2003, Hal Morrow, a citizen of the State of Texas, brought a complaint against three companies, Wyeth, Amgen Inc., and Immunex Corporation, and an individual who is a citizen of Texas, Heather Gregory. Dkt. No. 1, Ex. 1. None of the three companies is organized under the laws of Texas or has its principal place of business in Texas. Dkt. No. 1., at 4–5.

In his Original Petition, Mr. Morrow alleged four causes of action arising from his use of the pharmaceutical Etanercept, produced and marketed by the Defendants under the trade name Enbrel. Dkt. No. 1, Ex. 1, ¶¶ 25–54. These claims are: (1) negligence, (2) design and marketing defects, (3) inadequate and improper warnings, and (4) failure to warn and/or negligence in warning Mr. Morrow's physician of Enbrol's possible side effects by the Defendants' sales representative, Ms. Gregory. *Id.*

A First Amended Original Petition was filed three months later, on September 2, 2003. Dkt. No. 1, Ex. 2. In this petition, the current Plaintiffs were substituted for Mr. Morrow, who had died in the interim. *Id.* In addition to Heather Gregory, Sales

Representatives Jill M. Hicks, Dennis R. Kalk, Bruce E. Mitchell, Asheley O. Oefinger, Jane Fernald, Barbara St. George, James A. Edmondson, Phillip T. Perry, Irma J. Teniente, Rafael Sanchez, Rebecca S. Williams, Mark Ruffo, Don Lecocke, Jane McGilvray, Alberto Rodriguez, and Angela M. Johson ("Territory Sales Representative Defendants" or "TSR Defendants"), all citizens of Texas, were also added as defendants at this time. *Id.* ¶¶ 6–21. Plaintiffs specifically stated that "No service is being requested at this time" for each Defendant. *Id.* ¶¶ 3–21.

Plaintiffs filed a Second Amended Original Petition on June 23, 2005. Dkt. No. 1, Ex. 3. This petition is virtually identical to the Plaintiffs' First Amended Petition, except that this petition replaces the statement "No service is being requested at this time" with "Requesting all service at this time." *Compare id.* ¶¶ 3–21, *with* Dkt. No. 1, Ex. 2, ¶¶ 3–21.

According to Plaintiffs' own Motion to Remand, the first defendant served with process in this case was Defendant Wyeth, on June 23, 2005. Dkt. No. 6, at 2. All other Defendants were served on or after June 23, 2005. *Id.* According to Defendants Wyeth, Amgen Inc., and Immunex Corporation ("Corporate Defendants"), "no Corporate Defendant was served with any pleading . . . prior to June 24, 2005." Dkt. No. 1, at 10. Furthermore, Plaintiffs state that they "filed their Original Petition, after further investigation [they] filed amended petitions, then timely served Defendants." Dkt. No. 6, at 3. Based on these assertions, this Court finds that the Corporate Defendants were served at earliest on June 23, 2005.[1]

Defendants filed a Notice of Removal on July 22, 2005, relying on diversity of citizenship to provide subject matter jurisdiction. Dkt. No. 1. Plaintiffs filed their Motion to Remand on August 22, 2005, and Defendants responded with an Opposition to Plaintiffs' Motion to Remand on September 12, 2005. Dkt. Nos. 6, 8.

---

[1] Although the Court notes that there is some ambiguity concerning when, and even if, the Defendants were served with the Plaintiff's Original Petition, the Court finds that the Corporate Defendants were first apprised of this action on June 23, 2005.

**II. Standard for Motion to Remand**

Jurisdiction for removing an action originally brought in state court to federal court is authorized by 28 U.S.C. § 1441. This section permits a defendant to remove a civil case "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441 (2005). The burden of showing that federal jurisdiction exists is on the party seeking removal. *See* Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988).

Federal subject-matter jurisdiction is asserted in this case under 28 U.S.C. § 1332 — diversity jurisdiction. For diversity jurisdiction to exist, the case must involve citizens of different states and a matter which exceeds $75,000 in value, exclusive of interest and costs. 28 U.S.C. § 1332. For diversity purposes, a corporation is deemed to be a citizen of its state of incorporation and the state in which it maintains its principal place of business. *Id.* at § 1332(c)(1). This diversity of citizenship must be complete — meaning that the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See* Whalen v. Carter, 954 F.2d 1087, 1094 (5th Cir. 1992) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Mas v. Perry, 489 F.2d 1396, 1398–99 (5th Cir. 1974)).

Additionally, before a federal court can exercise jurisdiction over an action originally brought in state court, the Defendant must comply with removal procedures. These procedures are governed by 28 U.S.C. § 1446(b), which states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Therefore, Defendants, as the removing parties, bear the burden of establishing that

federal subject matter jurisdiction exists and that they have complied with the time limitations of § 1446(b).

### III. Analysis

Defendants removed this case pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Defendants must therefore establish that federal subject matter jurisdiction exists by showing that (1) the amount in controversy is at least $75,000; (2) complete diversity exists between the parties; and (3) they have satisfied all of the procedures for removal. *See* 28 U.S.C. §§ 1332, 1446. Each of these elements will be addressed below.

### *A. Amount in Controversy*

Plaintiffs allege no exact amount of damages in any of their petitions. However, Plaintiffs do claim that Hal Morrow suffered "severe injuries," including "serious injuries to his central nervous system." Dkt. No. 1, Ex. 3, ¶ 71. In addition, Plaintiffs' Second Amended Petition provides several assertions of why federal jurisdiction is not proper. *Id.* ¶ 24. Any allegation that the amount in controversy is less than $75,000 is conspicuously missing from this list. *See id.* Finally, although Defendants contend that this requirement is satisfied, Plaintiffs fail to respond to this argument in their Motion to Remand. Dkt. No. 1, at 2. All of these factors imply that the Plaintiffs' claims, if true, are worth more than $75,000. Therefore, this Court finds that Defendants have met their burden regarding the first requirement for diversity jurisdiction.

### *B. Complete Diversity*

To establish complete diversity, Defendants must show that the citizenship of each Defendant is diverse from the citizenship of each Plaintiff. *See Whalen*, 954 F.2d at 1094. The Plaintiffs are citizens of Texas. Dkt. No. 1, Ex. 3, ¶ 2. Therefore, no Defendant may be a citizen of Texas for complete diversity to exist.

None of the Corporate Defendants are citizens of Texas. Dkt. No. 1, at 4–5. Defendant Wyeth is a Delaware company with its principal place of business in New Jersey. *Id.* at 4. As such, it is a citizen of those two states. *See* 28 U.S.C. § 1332(c)(1). Defendant Amgen Inc. is also a Delaware company, and its principal place of business is in California. Dkt. No. 1, at 4. Defendant Immunex Corporation is incorporated in the

State of Washington and has its principal place of business in California. *Id.* at 5. Thus, the Corporate Defendants are completely diverse from the Plaintiffs.

However, the individual Defendants are citizens of Texas. *Id.* at 5; Dkt. No. 1, Ex. 3, ¶¶ 5–21. Because all Defendants must be diverse from all Plaintiffs, the presence of the individual Defendants in this action destroys diversity. Recognizing this defect in diversity, the Corporate Defendants contend that the TSR Defendants were improperly joined. The Corporate Defendants therefore contend that the citizenship of these TSR Defendants, all of whom are citizens of Texas, should not be considered in determining whether complete diversity exists. Dkt. No. 1, at 5–10. If the TSR Defendants were improperly joined, their citizenship is irrelevant and complete diversity exists in this case.

There are two methods to establish improper joinder:[2] "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See* Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (quotation omitted); Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5th Cir. 1999)). In this case, the Corporate Defendants do not dispute that the TSR Defendants are citizens of Texas. Therefore, the Court will only consider the second test.

Although a number of different standards have been articulated for determining whether a defendant has been improperly joined under the second test, the Fifth Circuit has adopted this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Smallwood*, 385 F.3d at 573. To survive the improper joinder test, a possibility of recovery must be reasonable and not merely theoretical. *Id.* at 573 n.9 (quoting Badon v. RJR

---

[2]Although there is no substantive difference, the Fifth Circuit has recently adopted the term "improper joinder" instead of "fraudulent joinder." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004).

Nabisco, Inc., 236 F.3d 282, 286 n.4 (5th Cir. 2000)); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (same). To predict whether a possibility of recovery exists, the court must determine if the petition states a claim under state law against the in-state defendant, by conducting "a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573. If the petition survives this challenge, then ordinarily the joinder is proper.[3] *Id.* It is a heavy burden that the removing party carries when attempting to prove improper joinder. *See id.* at 574; *Great Plains Trust Co.*, 313 F.3d at 312.

In this case, Plaintiffs specifically assert two claims against the TSR Defendants. Dkt. No. 1, Ex. 3, ¶¶ 63–69. First, Plaintiffs assert that the TSR Defendants "failed to adequately and properly warn the Plaintiff and/or prescribing Physicians about the possible side effects and dangers associated with taking Enbrel." *Id.* ¶ 65. Second, Plaintiffs allege negligence "in that [the TSR Defendants] failed to adequately and properly warn Plaintiff and/or prescribing physicians about the possible side effects and dangers associated with taking Enbrel." *Id.* ¶ 66. Plaintiffs also incorporate all of their other claims as claims against the TSR Defendants, including claims for (1) negligence in the design, marketing, manufacture, sale, testing, quality assurance, quality control, distribution, advertising, warning, and promotion of Enbrel; (2) design and marketing defects in that Enbrel was unreasonably dangerous; and (3) inadequate and improper warnings to users and/or prescribing physicians of Enbrel. *Id.* ¶ 63, 40–62. In their Motion to Remand, Plaintiffs specifically point to their allegation that "Defendants knew or should have known the product Enbrel created a high risk of unreasonable harm or side effects, some of which can cause extraordinary suffering or death." Dkt. No. 6, at 4. Therefore, to show that joinder of the TSR Defendants was improper, Defendants must prove that none of these causes of action provides a possible basis of relief.

This Court finds that none of these allegations provides a basis for relief against the

---

[3] A court may also enter into a summary inquiry by "pierc[ing] the pleadings." *Smallwood*, 385 F.3d at 573–74. Because the Court finds that the TSR Defendants were improperly joined based on a Rule 12(b)(6)-type analysis, the Court finds it unnecessary to engage in a summary inquiry.

TSR Defendants.  First, the TSR Defendants cannot have liability for any design defects associated with Enbrel, because the Plaintiffs do not allege that the TSR Defendants played any part in the design or manufacture of the drug.  *See* Firestone Steel Products Co. v. Barajas, 927 S.W.2d 608, 615 (Tex. 1996) (finding that a party who did not design, manufacture, or sell the product in question had no duty to the complainant).  Second, Texas law generally imposes liability on corporations, not on individual employees or officers of those corporations.  *See* Leitch v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996). Individual employees or officers can only be liable if they have "an independent duty of reasonable care to the injured party apart from the employer's duty."  *Id.* (citations omitted); *see also Great Plains Trust Co.*, 313 F.3d at 315.  Under Texas law, both negligence generally and the duty to warn specifically are duties of the corporation that do not create an independent duty in the employee.  *See, e.g., Leitch*, 935 S.W.2d at 117 ("[C]orporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care." (citations omitted)); Ferguson v. Wyeth, No. Civ. A. H-03-5141 (S.D. Tex. Jan. 29, 2004) ("The Court is of the opinion that these sales representatives cannot warrant or make representations about pharmaceutical products that would override the disclosure that is required of and made by the manufacturer of the drugs."); Brown v. Wyeth, No. Civ. A. H-03-2757, slip op. at 5 (S.D. Tex. Oct. 14, 2003) ("In the present case, plaintiff neither alleges nor presents facts that would create an independent duty owing from these individual employees to plaintiff, apart from the duty owing by Wyeth, that was violated." (citation omitted)).  The TSR Defendants in this case had no duties separate from those of the Corporate Defendants and therefore cannot be liable for negligence or for failure to warn.

Defendants rely on *Kingston v. Helm*, 82 S.W.3d 755 (Tex. App. 2002), in an attempt to show that the TSR Defendants can be liable for their alleged misconduct.  Dkt. No. 6, at 4.  In that case, the plaintiff sued the defendant "for fraud, DTPA [Deceptive Trade Practices Act], and negligent misrepresentation" claims, all arising from the purchase of a town home from Helm's employer.  *Kingston*, 82 S.W.3d at 757.  The plaintiff asserted "that Helm personally made false representations to him regarding the town

home." *Id.* The trial court entered a directed verdict for the defendant, finding that he could not be liable in his individual capacity. *Id.* The sole issue on appeal was "whether Helm may be held liable for any such alleged misrepresentations in his individual capacity." *Id.* at 758. The court began its analysis by stating two rules of Texas law: (1) "a corporation's employee is personally liable for tortious acts which he directs or participates in during his employment," and (2) "a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation." *Id.* at 758–59 (quotation and citation omitted). The court then applied these rules to find that Helm could be individually liable for his own fraudulent conduct and DTPA misrepresentations. *Id.* at 763–64.

This Court finds *Kingston* to be inapposite. This case is about the failure to abide by the duty to warn and negligence, not fraud or intentional misrepresentation. In fact, the court in *Kingston* found it necessary to distinguish the line of cases which dealt with "conduct that is more in the nature of the usual and customary duties required by the particular job" — in other words, negligence and breach of duty cases. *Id.* at 761. The court recognized that an employee could only be liable for his own negligent conduct if he owed an independent duty of care to the complaining party, but found that the intentional and knowing nature of misrepresentation and fraud claims made the independent duty requirement inapplicable in those cases. *Id.* Here, Plaintiffs allege negligence and failure to fulfill the duty to warn. *See* Dkt. No. 1, Ex. 3, ¶¶ 40–69. This case is therefore properly categorized as one in which the TSR Defendants can only be liable if they have independent duties of care. Thus, Plaintiffs' reliance on *Kingston* is misplaced.

This Court also notes that, even if Plaintiffs could show that the TSR Defendants owed individual duties of care to Hal Morrow, Plaintiffs have failed to allege sufficient facts for the TSR Defendants to prepare a defense. For example, Plaintiffs fail to identify Mr. Morrow's treating physician. At least one court has previously based a finding of improper joinder on this ground alone. *See* Moffett v. Wyeth, No. DR-03-CV-069-OLG/DG, slip op. at 4 (W.D. Tex. Dec. 23, 2003) ("How can the detail representatives prepare for a defense in this case without the name of Plaintiff's physician? . . . Because Plaintiff has failed to

give sufficient factual information so that Defendant can prepare for a defense, a finding of fraudulent joinder is warranted."). Thus, Plaintiffs' pleadings are insufficient regarding the TSR Defendants.[4]

Based on this reasoning, the Court finds that Defendants have shown that Plaintiffs have no possibility of recovery against the TSR Defendants. Defendants have carried their heavy burden. The TSR Defendants were improperly joined and complete diversity exists in this case.

### *C. Removal Procedures*

In addition to satisfying the diversity jurisdiction requirements, Defendants must also have satisfied the procedural requirements for removal to be proper. Plaintiffs contend that removal is barred by the one-year limitation found in 28 U.S.C. § 1446(b). Dkt. No.

---

[4]Corporate Defendants also proffer two other contentions — (1) that improper joinder is demonstrated by the fact that of the few TSR Defendants who actually promote Enbrel, none have promoted it to Mr. Morrow or his physician; and (2) that the learned intermediary doctrine shows that the TSR Defendants had no duty to warn Mr. Morrow directly. Dkt. No. 1, at 8–9; Dkt. No. 8, at 9–11. The Court finds that neither of these contentions is necessary or even relevant at this point in the proceedings.

For the first of these arguments, there is insufficient evidence in the record to determine whether the TSR Defendants involved with Enbrel promoted it to Mr. Morrow's physician or not. In fact, the Defendants themselves state that they are unaware of this physician's identity. Dkt. No. 1, at 9 n.4. Thus, although most of the TSR Defendants may be improperly joined because they do not promote Enbrel, the Court cannot find that *all* of the TSR Defendants are improper on this basis. Therefore, the argument is irrelevant for purposes of demonstrating complete diversity.

The learned intermediary doctrine is also irrelevant at this stage of the proceedings, because it goes to the merits of the case, not jurisdiction. The learned intermediary doctrine states that warnings of side effects of pharmaceuticals may be given to the physician and not to the patient. *See, e.g.*, Reyes v. Wyeth Labs., 498 F.2d 1264, 1276 (5th Cir. 1974) ("[T]he manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." (citations omitted)). This does not change any duties, but merely shelters the party with the duty to warn from liability if the physician was properly warned. Therefore, this doctrine has no bearing on *who* has the duty to warn. *See, e.g.*, Wyeth-Ayerst Labs. Co. v. Medrano, 28 S.W.3d 87, 93 (Tex. App. 2000) ("Irrespective of the origin of the information, it still went through the learned intermediary to get to Medrano.").

6, at 3. Defendants respond by asserting that the one year limit does not apply in this case and that even if it did the Court should grant an equitable exception based on forum manipulation. Dkt. No. 8, at 5–7. The Court will consider both of these issues, and it will consider whether removal was filed within 30 days of Defendants' receipt of the petition.

### 1. The One-Year Limit

Fifth Circuit precedent clearly dictates that the one-year limitation only applies to cases which are not removable when filed. *See* Johnson v. Heublein, Inc., 227 F.3d 236, 241 (5th Cir. 2000); Badon v. RJR Nabisco Inc., 224 F.3d 382, 389, 390 (5th Cir. 2000); N.Y. Life Ins. Co. v. Deshotel, 142 F.3d 873, 886 (5th Cir. 1998). The one-year limitation is found in the second paragraph of § 1446(b). *See* 28 U.S.C. § 1446(b). "[T]he second paragraph applies to those cases which are not removable originally but become removable at a later time, and the one-year limitation on removals *applies only to the second paragraph* of that section." *Johnson*, 227 F.3d at 241 (emphasis added); *see also Badon*, 224 F.3d at 389, 390; *Deshotel*, 142 F.3d at 886. In contrast, the first paragraph "applies to cases which are removable as initially filed." *Johnson*, 227 F.3d at 241. Therefore, the one-year limitation does not apply to cases removable when filed.

This case was removable when it was filed. Plaintiff's Original Complaint involved Hal Morrow as the sole plaintiff and the Corporate Defendants and Heather Gregory as defendants. Dkt. No. 1, Ex. 1. Mr. Morrow was a citizen of Texas. *Id.* ¶ 2. None of the Corporate Defendants is a citizen of Texas. Dkt. No. 1, at 4–5. Ms. Gregory was improperly joined. *See supra* § III.B. Therefore, this case was originally removable, and the one-year limitation does not apply. *See Johnson*, 227 F.3d at 241 ("[B]ecause the present case was removable upon its initial pleading, the Co-defendants' ultimate removal of this case is not governed by the second paragraph of § 1446(b) or its one-year limitation.").

### 2. Equitable Exception

Fifth Circuit precedent also permits equitable exceptions to the one-year limit on removal. *See* Tedford v. Warner-Lambert Co., 327 F.3d 423, 424 (5th Cir. 2003). When the Court finds that forum manipulation has occurred, it has discretion to override the

statutory time limitations.  *See* Kinabrew v. Emco-Wheaton, Inc., 936 F. Supp. 351, 353 (M.D. La. 1996) (citing Brown v. Demco, Inc., 792 F.2d 478 (5th Cir. 1986)).  Preventing a defendant from exercising his right to removal, by intentionally delaying service of process for more than a year, constitutes forum manipulation.  *Id.*

In this case, Plaintiffs specifically requested that their petition not be served on the Defendants.  *See* Dkt. No. 1, Ex. 2, ¶¶ 3–21.  This caused a gap of almost 26 months between the filing of the Original Petition and the first time any of the Corporate Defendants were served.  *See supra* § I.  Plaintiffs attempt to explain this delay by stating that "Plaintiffs filed their Original Petition, after further investigation Plaintiffs filed amended petitions, then timely served Defendants."[5]  Dkt. No. 6, at 3.  The Court finds that this reason does "not demonstrate good faith."  *Kinabrew*, 936 F. Supp. at 353 (finding that properly investigating a claim did not demonstrate a good faith reason for delaying service for 13 months).  As such, the Court finds that Plaintiffs have engaged in forum manipulation, and this case is proper for an equitable exception to the one-year limitation even if the limitation does apply.  *See id.*

### 3. Filing Deadline

Under § 1446(b), the Corporate Defendants must have filed their Notice of Removal within 30 days of receipt of the petition.  This time period does not begin to run until Defendants actually receive service of process.  *See* Badon v. RJR Nabisco Inc., 224 F.3d 382, 390 n.12 (5th Cir. 2000) (citing Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344 (1999)).  In this case, no Corporate Defendant received service of process until at earliest June 23, 2005.  *See supra* note 1.  The Defendants therefore had until July 23, 2005 to file a removal notice.  *See* 28 U.S.C. § 1446(b) (2005); Fed. R. Civ. P. 6(a).  The Corporate Defendants filed their Notice of Removal on July 22, 2005.  *See* Dkt. No. 1.  The notice was timely, and this Court finds that Defendants properly complied with all of the procedures for removal.

---

[5]The Court notes that Plaintiffs provide no explanation as to why their Second Amended Original Petition took over two years to file when they were able to submit their First Amended Original Petition after only three months.

-11-

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand is **DENIED**.  Dkt. No. 6.

DONE at Brownsville, Texas, this 13th day of October, 2005.

Hilda G. Tagle
United States District Judge